IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| LARRY F. VRZALIK, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:05-CV-1875-K |
| | § | |
| JOHN E. POTTER, POSTMASTER | § | |
| GENERAL, UNITED STATES | § | |
| POSTAL SERVICE, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

Before the court is Defendant's Motion for Summary Judgment, filed September 21, 2007. Following review and consideration of the motion, response, reply, pleadings on file in this case, summary judgment evidence, and the applicable law, the court **grants** Defendant's Motion for Summary Judgment, and dismisses Plaintiff's claims with prejudice. Defendant's Motion to Strike Plaintiff's Summary Judgment Evidence, filed November 29, 2007, is **denied as moot.**

### I.      Factual and Procedural Background

The court's summary of the factual and procedural basis for this action is as follows:

#### A.      Relevant Employment History

Plaintiff Larry Vrzalik ("Vrzalik") is a fifty-one year old white male. He began

1

working for Defendant, the United States Postal Service ("USPS") in August 1974. In early 2000, Vrzalik was appointed the Postmaster of Forney, Texas. However, he did not actually assume the duties of Postmaster until June 2002.

Between 2000 and 2002, Vrzalik was serving on an Automatic Workforce Projection System ("AWPS") Function Four team. The AWPS Function Four team was a group of postal service employees who would visit a post office to review the efficiency of that office's work tasks, by observing and collecting data regarding the office's activities and functioning. After such a review, a report was generated by the postal service's Manager of Post Office Operations Support Office, which provided the Manager of Post Office Operations ("MPOO") with recommendations regarding the allocation of budgeted work hours for that particular post office.

When Vrzalik began his position as the Forney Postmaster, he reported to Norman Webb ("Webb"). Webb was the incumbent MPOO and Vrzalik's immediate supervisor. Webb supervised Vrzalik until Webb's retirement in late 2002 or early 2003. In 2002, Vrzalik told Webb that the Forney post office was a high growth office and that he needed additional help in terms of staffing. Webb did not provide the Forney post office with additional help at that time, although he did allow neighboring postmasters to assist Vrzalik through route adjustments. After Webb's retirement, James Oliver briefly served as Vrzalik's MPOO. Vrzalik does not allege herein that either Webb or Oliver took any action toward him that was discriminatory or

retaliatory. Factually, Vrzalik bases his claims on three separate issues that arose during his employment: the work hour budget he received as Postmaster of the Forney post office in October 2003, a Letter of Warning given to him by his supervisor, and his supervisor's denial of his request to have 32 hours of leave he took coded as annual leave instead of sick leave. The court will review each of these factual scenarios below.

### 1. Budget for the Forney Post Office

Sheila Jennings ("Jennings") is a fifty-six year old white female. She became Vrzalik's MPOO in October 2003. Shortly after Jennings became Vrzalik's MPOO, Vrzalik informed Jennings by e-mail that he was short of staff and resources, and requested that his fiscal year 2004 budget be revisited. Vrzalik stated that although Forney was a Level 20 office, his work hour budget had been calculated under the Level 18 AWPS methodology rather than the Level 20 AWPS methodology, which Vrzalik felt would give him more work hours for the 2004 fiscal year.

Vrzalik also contacted Budget Analyst Julie Holton ("Holton") of the Finance Department, stating that the Forney post office should have been given a budget calculated according to the Level 20 AWPS methodology. Holton responded that by her calculations, the Forney office actually received a greater number of hours under the Level 18 methodology than it would have under the Level 20 methodology. Vrzalik disagreed, and performed his own calculations, believing that they showed he was entitled to a larger work hour budget.

In April 2004, the AWPS Function Four team visited the Forney post office. Vrzalik again disagreed with the results of the April 2004 AWPS Function Four team revisit. Late in 2004, Vrzalik again complained to Jennings that his budgeted work hours were inadequate, and Jennings asked for another AWPS Function Four team revisit. Although the AWPS Function Four team's analysis arrived at a number of work hours that was about 800 hours short of his own calculations, Vrzalik "felt good" about the results of this second revisit, which showed that he needed substantially more work hours and three additional employees. He agreed to the results of that analysis and did not challenge the team's data, which he stated was very similar to that reported by him or his staff during that same time period.

## 2.     Letter of Warning ("LOW")

Between October 21-31, 2003, the Office of Inspector General ("OIG") conducted a self-initiated review of the Forney post office. The Forney post office was selected for review at random. Following the review, the OIG held an exit conference with Vrzalik. The OIG noted several problems, including the failure to audit a vending machine at the Forney post office. On December 31, 2003, the OIG's final report regarding its review was issued and sent to Jennings and Vrzalik.

Jennings felt that the failure to manage the vending machines was one of the more serious issues identified in the OIG report. She was unable to immediately discuss the report with Vrzalik, because Vrzalik was out on leave when it was issued. In April 2004,

after Vrzalik's return to work, he and Jennings met to discuss the report. On April 28, 2004, Jennings issued a Letter of Warning ("LOW") to Vrzalik for Unsatisfactory Performance – Failure to Follow Instructions regarding the vending machine that had not been audited for three years, during which Vrzalik had been the Forney Postmaster for approximately ten months.

Although Vrzalik did not dispute the actual OIG findings, he disagreed with Jennings' decision to discipline him by issuing him a LOW. On June 1, 2004, Jennings notified Vrzalik that the LOW would be withdrawn one year after the date of its receipt, rather than the normal two years. Vrzalik did not receive any subsequent discipline. Between February and June 2004, Jennings also issued LOW's to seven other Postmasters for Unsatisfactory Performance – Failure to Follow Instructions. Jennings was unaware of whether any of these other employees had a history of EEO activity. Of the seven employees disciplined, three were black and six were older than Vrzalik.

### 3. Request for Annual Leave

In late October 2003, Vrzalik wanted to use some of his annual leave before the year's end so that he would not have too many leave hours to carry over. Concerned that he would lose the leave due to the postal service's "use it or lose it" policy, Vrzalik requested annual leave to be taken before the end of 2003. Jennings told him that he could take annual leave, but that she expected him to correct the issues identified by the OIG's exit conference and to adjust his rural routes before taking the leave.

According to Vrzalik, this leave had already been approved, and Jennings denied his request after he informed her of his decision to file an EEO complaint.

On November 4, 2003, Vrzalik called Jennings and told her that his doctor was placing him on sick leave, effective immediately. Jennings was subsequently informed by the postal service that Vrzalik had been placed on family medical sick leave until January 4, 2004. Because Vrzalik was out on sick leave, Jennings reassigned Ron Fowler ("Fowler") to manage the Forney post office.

In December 2003, Fowler informed Jennings that Vrzalik had requested that his sick leave be coded as annual leave. Jennings states that she began to code Vrzalik's leave as annual leave beginning December 15, 2003, although she did not adjust Vrzalik's leave designation for prior dates. Vrzalik believes that Jennings did not change his leave designation and charged his entire leave against sick leave time. Vrzalik thus contends that as a consequence, he lost 32 hours of annual leave. In early January 2004, Jennings was informed by Vrzalik and his physician that Vrzalik would need to extend his leave until April 1, 2004. Vrzalik returned to work in April 2004.

## B.    Vrzalik's EEO Charge and Claims

On October 30, 2003, Vrzalik emailed Jennings, Oliver, Senior Manager Post Office Operations Mike Walder ("Walder"), and District Manager Carl January ("January") stating that he was filing an EEO complaint based upon alleged age discrimination and a hostile work environment. Vrzalik filed his EEO complaint in

November 2003, and later amended his complaint to include claims of racial discrimination and retaliation. Vrzalik then filed this suit on September 22, 2005, alleging age discrimination in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621, *et seq.,* and for racial discrimination and retaliation under Title VII, 42 U.S.C. § 2000e, *et seq.* Defendant now moves for summary judgment.

## II.    Summary Judgment Standard

Summary judgment is appropriate when the pleadings, affidavits and other summary judgment evidence show that no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2551 (1986). The moving party bears the burden of identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact. *Celotex,* 477 U.S. at 322-25, 106 S.Ct. at 2551-54. Once a movant makes a properly supported motion, the burden shifts to the nonmovant to show that summary judgment should not be granted; the nonmovant may not rest upon allegations in the pleadings, but must support the response to the motion with summary judgment evidence showing the existence of a genuine fact issue for trial. *Id.* at 321-25, 106 S.Ct. at 2551-54; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255-57, 106 S.Ct. 2505, 2513-14 (1986). All evidence and reasonable inferences must be viewed in the light most favorable to the nonmovant. *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993 (1962).

### III. Defendant's Motion for Summary Judgment

Defendant seeks summary dismissal of all of Vrzalik's claims, contending that Vrzalik cannot raise a genuine issue of material fact with regard to any of his claims, and that therefore it is entitled to judgment as a matter of law.

### A. Discrimination Claims

Vrzalik contends that Defendant discriminated against him due to his race and age, in violation of both Title VII and the ADEA. Defendant moves for summary judgment on all of Vrzalik's discrimination claims.

### 1. Legal Standards for Discrimination Claims

Under Title VII, an employer cannot fail or refuse to hire or to discharge any individual, or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin. 42 U.S.C. § 2000e-2(a)(1). Thus, the Title VII inquiry is whether the defendant intentionally discriminated against the plaintiff based upon one of the factors prohibited by Title VII. *Johnson v. Louisiana,* 351 F.3d 616, 621 (5th Cir. 2003), *citing United States Postal Service Bd. of Governors v. Aikens,* 460 U.S. 711, 715 (1983). Similar to the prohibitions of Title VII, the ADEA makes it illegal for an employer to fail or refuse to hire an individual or otherwise discriminate against an individual with respect to the terms and conditions of his employment due to his age. 29 U.S.C. § 623(a)(1).

To prevail on a Title VII or ADEA claim, a plaintiff must demonstrate a *prima facie* case of discrimination, and the defendant must then articulate a legitimate, non-discriminatory reason for its decision. *Keelan v. Majesco Software, Inc.,* 407 F.3d 332, 341 (5th Cir. 2005); *Machinchick v. PB Power, Inc.,* 398 F.3d 345, 352 (5th Cir. 2005). If the defendant meets its burden of production, the plaintiff must then offer sufficient evidence to create a genuine issue of material fact either 1) that the defendant's reason is not true, but is instead a pretext for discrimination (pretext alternative); or 2) that the defendant's reason, while true, is only one of the reasons for its conduct, and another motivating factor is the plaintiff's protected characteristic (mixed-motive alternative). *Id.; Desert Palace, Inc. v. Costa,* 539 U.S. 90 (2003).

Under the pretext alternative, the plaintiff bears the burden of on the ultimate issue of discriminatory intent. *Keelan,* 407 F.3d at 340-41, *citing Raytheon Co. v. Hernandez,* 540 U.S. 44, 49 & n.3 (2003). However, if the plaintiff demonstrates under the mixed-motive alternative that race or age was a motivating factor in the employment decision, the burden shifts again to the defendant to prove that the same adverse employment decision would have been made regardless of discriminatory animus. *Keelan,* 407 F.3d at 341; *Machinchick,* 398 F.3d at 352. If the employer fails to carry this burden, plaintiff will prevail under the mixed-motive alternative. *Id.*

## 2.     Analysis of Vrzalik's Discrimination Claims

The court notes initially that Vrzalik devotes much of the factual discussion and

argument contained in his summary judgment response to allegations of a "pattern" of race discrimination involving the discrimination claims of numerous employees other than Vrzalik. The "pattern and practice" method of proof is available only for class action employment discrimination claims. *Frank v. Xerox Corp.,* 347 F.3d 130, 136 (5th Cir. 2003); *Celestine v. Petroleos de Venezuella, S.A.,* 266 F.3d 343, 351 (5th Cir. 2001). Because Vrzalik is pursuing individual claims of discrimination here, his "pattern and practice" allegations pertaining to other employees are not relevant to whether he is able to avoid summary judgment. Rather, he must show that there is a genuine issue of fact for trial within the traditional burden-shifting evidentiary framework set forth above.

### i. Budgeted Work Hours

Vrzalik first claims that Defendant discriminated against him due to his race and age because he was granted a smaller work hour budget for the 2004 fiscal year than he believed that he was entitled to under the AWPS methodology. Defendant contends that he is entitled to summary judgment on this claim.

To establish a *prima facie* case of discrimination, Vrzalik must show that 1) he is within the protected class; 2) he was qualified for his position; 3) he suffered an adverse employment decision; and 4) he was replaced by someone outside his protected class, or treated less favorably than similarly situated employees outside the protected class. *Smith v. City of Jackson, Mississippi,* 351 F.3d 183, 196 (5th Cir. 2003), *aff'd on other grounds,* 544 U.S. 228 (2005); *Sanstad v. CB Richard Ellis, Inc.,* 309 F.3d 893, 897 (5th

Cir. 2002), *cert. denied,* 539 U.S. 526 (2003).

To show disparate treatment between different individuals, those individuals must be similarly situated – meaning that their circumstances must be "nearly identical." *Keelan,* 407 F.3d at 345; *Mayberry v. Vought Aircraft Co.,* 55 F.3d 1086, 1090 (5th Cir. 1995). Defendant argues that Vrzalik cannot establish a *prima facie* case of race or age discrimination because he has not shown that any similarly-situated employees outside the protected class were treated differently. In support, Defendant cites to Jennings testimony that she managed 110 post offices (including Forney), and that with regard to work hour budgeting issues, she relied upon the analysis and recommendations of Kenyon and the AWPS Function Four team in order to allocate budgeted work hours to each office.

Vrzalik has provided no evidence on summary judgment that raises a genuine issue of material fact as to whether any postmasters outside the protected class were treated differently with respect to the work hours allocated to their respective offices. Instead, Vrzalik attempts to avoid summary judgment by citing to testimony from January as to whether the USPS has an affirmative action program, and other evidence related to the purported claims of employees other than Vrzalik. He also cites to proof of a "pattern and practice" of discrimination, which the court has stated will not support his claims of individual discrimination. Because Vrzalik has failed to raise a genuine issue of material fact whether Defendant treated him differently than similarly-situated

postmasters who were outside the protected class, he has not established a *prima facie* case of discrimination based upon his race or age.

Even if Vrzalik had established a *prima facie* case of discrimination (which he has not), the court finds that Defendant has sufficiently articulated a legitimate non-discriminatory reason for its actions. Specifically, Defendant's summary judgment proof shows that the number of hours allocated to Vrzalik's post office was determined by using a standardized methodology implemented by the AWPS Function Four team.

Therefore, the burden would then shift back to Vrzalik to raise a material issue of fact regarding whether Defendant's proffered reason is either a pretext for discrimination, or that even if the reason advanced by Defendant is true, that discriminatory intent also motivated Defendant's decision. *Keelan,* 407 F.3d at 340-41. Again, to raise a genuine issue of material fact regarding pretext, Vrzalik must show that Defendant treated him less favorably than non-white, younger employees in "nearly identical" circumstances. *Bryant v. Compass Group USA Inc.,* 413 F.3d 471, 478 (5th Cir. 2005), *cert. denied,* 126 S. Ct. 1027 (2006); *Okoye v. Univ. of Tex. Houston Health Sci. Ctr.,* 245 F.3d 507, 514 (5th Cir. 2001).

Vrzalik has not identified any postmasters either younger or non-white whose post offices' budgeted work hours were determined differently than the hours for his post office. He also does not provide any proof that would suggest that even if Defendant has been truthful in its account of how it allocated his office's budgeted work

hours, it still was motivated at least in part by a desire to discriminate against Vrzalik because of his age or race. Accordingly, the court also determines that Vrzalik has also failed to raise a genuine issue of material fact as to the third element of this discrimination claim, and Defendant is entitled to dismissal of this claim on summary judgment.

### ii.     Letter of Warning ("LOW")

Vrzalik's next discrimination claim is based upon the Letter of Warning he received in April 2004, following the OIG review which showed that the vending machine at the Forney post office had not been audited when it should have been. With regard to this claim, Defendant again argues that Vrzalik cannot establish a *prima facie* case of employment discrimination because he cannot show that similarly-situated employees outside the protected class received different treatment. The court agrees. Vrzalik has produced no competent summary judgment proof showing that other employees who were either non-white and/or younger than he were not disciplined in a factually similar situation. Further, Defendant's summary judgment proof shows that Jennings also issued LOWs for unsatisfactory performance/failure to follow instructions to seven other postmasters between February and June 2004, and that three of those LOWs were issued to black employees. Vrzalik has not disputed these facts, and the court finds that Vrzalik has not set forth the required *prima facie* case of discrimination in support of this claim.

The court also finds that Defendant has sufficiently expressed a legitimate, non-discriminatory reason for Vrzalik's LOW – that the OIG review showed that the Forney post office vending machine had not been audited for approximately three years, ten months of which Vrzalik had been Postmaster. In turn, Vrzalik has not set forth any evidence that raises a genuine issue of material fact whether Defendant's reason for issuing the LOW is either pretextual, or if, true, that discrimination was an additional motive for Defendant's actions. *Keelan,* 407 F.3d at 340-41 Defendant is entitled to summary judgment on this claim.

### iii.    Annual Leave

Vrzalik's final claim of discrimination is based upon his request that Jennings code his sick leave taken between November 2003 and April 2004 as annual leave instead of sick leave. Vrzalik contends that Jennings failed to code the leave as requested, resulting in a loss of 32 hours of annual leave. As with Vrzalik's other discrimination claims, Defendant argues that he cannot establish the fourth element of his *prima facie* case – that other employees outside of his race or age range were treated differently in a similar situation. Vrzalik's summary judgment evidence does not raise a genuine issue of material fact whether other employees who were either non-white or outside of his age category had their sick leave coded as annual leave, whereas Vrzalik did not. Thus, the court finds that Vrzalik has not sufficiently established this prong of his *prima facie* case.

Further, the court finds that even if Vrzalik had established his *prima facie* case with respect to this claim, Defendant has provided proof of a legitimate, non-discriminatory reason for initially coding the leave as sick leave. Defendant's summary judgment evidence shows that once Jennings was informed that Vrzalik wanted to designate his leave as annual leave, she began to code the leave that way. Jennings did not go back and change the leave previously coded as sick leave, because she believed that regular postal service procedure required Vrzalik to make such a request in advance. Jennings further states in her declaration that she has not retroactively re-coded a leave designation for any other individual.

Because Defendant has provided a legitimate, non-discriminatory reason for initially designating Vrzalik's leave as sick leave rather than annual leave, the burden would then shift back to Vrzalik to raise a material question of fact whether Defendant's reason is either untrue, and a pretext for discrimination, or that even though it is true, that Defendant also had a discriminatory motive for failing to code his entire leave as annual leave. *Keelan,* 407 F.3d at 341. Vrzalik has produced no summary judgment evidence which would, when taken in the light most favorable to him, show that Defendant's reasons for initially coding his leave as sick leave are either untruthful, or that despite their truth, Defendant also acted out of a desire to discriminate against him because of his race or age. The court will enter summary judgment for Defendant on this claim.

### B.    Retaliation Claims

Having determined that Vrzalik's race and age discrimination claims must fail, the court turns to his claims for unlawful retaliation. Vrzalik asserts that after he filed his EEO complaint, Jennings retaliated against him by denying his request for annual leave and issuing a LOW to him in relation to the OIG findings concerning the vending machine audit. Defendant responds that Vrzalik is unable to set forth sufficient evidence raising a genuine issue of material fact whether retaliation was the true reason for either of these employment actions, or whether the legitimate, non-retaliatory reasons provided by Defendant are true, but also influenced by discriminatory intent.

### 1.    Standards for Retaliation Claims

Title VII and the ADEA both prohibit discrimination against employees who have opposed an unlawful employment practice, made a charge of discrimination, or testified, assisted, or participated in any manner in an investigation or proceeding under the relevant statutes. 42 U.S.C. § 2000e-3(a); 29 U.S.C. § 623(d). The traditional burden-shifting framework articulated in *McDonnell Douglas* applies to Vrzalik's retaliation claim. *Evans v. City of Houston,* 246 F.3d 344, 351 (5th Cir. 2001), *citing McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973). However, where an employee concedes that retaliation was not the *sole* reason for his discharge, but argues that it was at least a motivating factor for his termination, the mixed-motive framework applies. *Richardson v. Monitronics Intl., Inc.,* 434 F.3d 327, 333 (5th Cir. 2005) (emphasis in original). The mixed motive

16

framework is identical to the *McDonnell Douglas* analysis, except at the pretext stage. There, instead of showing pretext by setting forth evidence showing that the employer's reason for discharge is untrue, the employee must show that the employer's reason, *while true*, is but one of the reasons for its action, another of which was retaliation. *Id.* (Emphasis added). If the employee successfully carries this burden, the burden then shifts to the employer, to prove that it would have taken the same action in absence of the retaliatory animus. *Id.*

To establish a *prima facie* case of retaliation, Vrzalik must show that 1) he engaged in an activity protected by the applicable statutes; 2) he was subjected to an adverse employment action; and 3) that a causal link exists between the protected activity and the adverse employment action. *Davis v. Dallas Area Rapid Transit,* 383 F.3d 309, 319 (5th Cir. 2004); *Perez v. Region 20 Education Svc. Ctr.,* 307 F.3d 318, 325 (5th Cir. 2002).

If Vrzalik establishes a *prima facie* case of retaliation, the burden shifts to present proof of a legitimate, nonretaliatory purpose for its actions. *Davis,* 383 F.3d at 319. Then, if Defendant carries its burden of production, Vrzalik must show that "but for" his engaging in protected activity, he would not have been subjected to an adverse employment action. *Strong v. University Healthcare Sys., L.L.C.,* 482 F.3d 802, 806 (5th Cir. 2007)*; Medina v. Ramsey Steel Co.,* 238 F.3d 674, 685 (5th Cir. 2001); *Sherrod v. American Airlines, Inc.,* 132 F.3d 1112, 1122 (5th Cir. 1998).

While this portion of the analysis may seem identical to the "causal link" step of the *prima facie* case, the burden here is more stringent. *Medina,* 238 F.3d at 685; *McMillan v. Rust College, Inc.,* 710 F.2d 1112, 1116-1117 (5th Cir. 1983). To withstand summary judgment, Vrzalik must reveal "a conflict in the substantial evidence on the ultimate issue of retaliation." *Sherrod,* 132 F.3d at 1122. Otherwise, if Vrzalik were to proceed under the mixed-motive theory and admit that Defendants' reasons for its actions are at least in part true, he must still show that another factor in Defendant's decisions was retaliation for his alleged protected activity. *Richardson,* 434 F.3d at 333.

### 2.      Analysis of Vrzalik's Retaliation Claims

Vrzalik claims that Defendant illegally retaliated against him by issuing the LOW and by coding his sick leave incorrectly, causing him to lose accrued annual leave. Defendant responds that it is entitled to summary judgment on both of Vrzalik's retaliation claims.

### i.      Letter of Warning

Defendant argues that summary judgment is warranted on this retaliation claim because Vrzalik cannot establish a causal link between his protected activity and the LOW. In support, Defendant cites Vrzalik's testimony that it was his belief that the LOW was issued due to his EEO activity, and that he does not know of anyone else who would have received a LOW for the same type of offense. Vrzalik has presented no proof showing that other employees who had not engaged in protected activity did not

receive a LOW for the same offense, leaving him with only his subjective belief that Jennings gave him the LOW at least in part because of his protected activity. This evidence is not sufficient for Vrzalik to move beyond the *prima facie* stage of the analysis. *See Byers v. Dallas Morning News, Inc.,* 209 F.3d 419, 427 (5th Cir. 2000) (employee's subjective belief of discrimination, no matter how genuinely held, cannot be the basis for judicial relief); *Lawrence v. University of Texas Medical Branch at Galveston,* 163 F.3d 309, 313 (5th Cir. 1999)(same); *Douglass v. United Services Automobile Association,* 79 F.3d 1415, 1430 (5th Cir. 1996) (same).

Even if Vrzalik had successfully set forth a *prima facie* case of retaliation, the court finds that Defendant has sufficiently articulated a legitimate, non-retaliatory reason for the LOW. Defendant's evidence shows that the LOW was issued to Vrzalik because the OIG review showed that the vending machine at the Forney post office had not been audited for several years, including the time period when Vrzalik had been Postmaster. Finally, Vrzalik has provided no evidence of either "but for" or "mixed motive" causation that would tie Defendant's decision to issue the LOW to his prior EEO activity. The court must enter summary judgment for Defendant on this claim.

## ii. Annual Leave

Vrzalik's second retaliation claim has the same factual basis as his discrimination claim related to the designation of his sick leave as annual leave. Again, Vrzalik cannot support a critical element of his *prima facie* case – that there is a "causal link" between

his protected activity and Jennings' refusal to adjust the status of leave already taken from sick leave to annual leave. *Davis,* 383 F.3d at 319; *Perez,* 307 F.3d at 325. Vrzalik's only proof of such a connection is his subjective belief that her decision was retaliatory, either in whole or in part. Vrzalik admits that he does not have any knowledge of whether Jennings had made the type of leave adjustment he sought for other individuals who did not engage in protected activity. Therefore, this retaliation claim fails at the *prima facie* stage.

Even if Vrzalik had sufficiently established his *prima facie* case, Defendant has carried its burden of production by showing that Jennings did not retroactively adjust the way Vrzalik's leave was coded, because the request must have been made prior to the leave. Therefore, the burden then shifts back to Vrzalik to establish that his protected activity was either a "but for" cause of Jennings' action, or that it at least partially motivated her decision not to change the coding of leave already taken by Vrzalik. As the court has stated above with respect to the "causal link" element of this claim, Vrzalik has no proof beyond his subjective belief, which will not permit him to avoid summary judgment. This claim also must be dismissed.

### C. Hostile Work Environment

When Vrzalik initially made his EEO complaints, he included a claim for hostile work environment. Although Vrzalik's pleadings do not clearly include a hostile work environment claim, Defendant has moved for summary judgment on this claim.

A plaintiff bringing a hostile work environment claim must establish that 1) he belongs to a protected class; 2) he was subjected to unwelcome harassment; 3) the harassment was based on his status as a member of a protected class; 4) the harassment affected a term, condition or privilege of employment; and 5) the employer knew or should have known of the harassment and failed to take remedial action. *Green v. Administrators of the Tulane Educational Fund,* 284 F.3d 642, 655 (5th Cir. 2002); *Woods v. Delta Beverage Group, Inc.,* 274 F.3d 295, 298-99 (5th Cir. 2001). Conduct sufficient to create a hostile working environment must be severe or pervasive. *Burlington Indus., Inc. v. Ellerth,* 524 U.S. 742, 752 (1998). To be actionable, the alleged harassment must have created an environment that a reasonable person would find hostile or abusive. *Woods,* 274 F.3d at 299. Whether an environment is hostile or abusive depends on the totality of the circumstances, including factors such as the frequency of the conduct, its severity, the degree to which the conduct is physically threatening or humiliating, and the degree to which the conduct unreasonably interferes with an employee's work performance. *Harris v. Forklift Systems, Inc.,* 510 U.S. 17, 21-22 (1993).

Here, Defendant points out that Vrzalik's summary judgment response does not address his hostile work environment claim, and he has cited no specific evidence to support the elements of such a claim. The court is not required to scour the record in search of a fact issue that will permit Vrzalik to avoid summary judgment. *Malacara v. Garber,* 353 F.3d 393, 405 (5th Cir. 2003); *Ragas v. Tennessee Gas Pipeline Co.,* 136 F.3d

455, 458 (5ᵗʰ Cir. 1998).  Accordingly, the court agrees with Defendant that Vrzalik has failed to raise a genuine issue of material fact regarding his claim for a hostile work environment (if any), and this claim must be dismissed.

### D.    Constructive Discharge

In the course of his response to Defendant's motion for summary judgment on his retaliation claims, Vrzalik states in passing that he was constructively discharged. Although it is unclear whether Vrzalik advances a discrete claim for constructive discharge, the court will briefly address such a claim here.

Constructive discharge occurs when an employee quits under circumstances that are treated as an involuntary termination of employment.  *Haley v. Alliance Compressor LLC,* 391 F.3d 644, 649 (5ᵗʰ Cir. 2004).  Whether a constructive discharge has occurred is case and fact-specific.  *Id.*  The test for constructive discharge is whether the plaintiff's working conditions were so intolerable that a reasonable person in the plaintiff's shoes would have felt compelled to resign.  *Id.* at 650; *Brown v. Kinney Shoe Corp.,* 237 F.3d 556, 566 (5ᵗʰ Cir.), *cert. denied,* 534 U.S. 817 (2001); *Webb v. Cardiothoracic Surgery Assocs. of North Texas, P.A.,* 139 F.3d 532, 539 (5ᵗʰ Cir. 1998).  However, "part of an employee's obligation to be reasonable is an obligation not to assume the worst, and not to jump to conclusions too fast.'" *Webb,* 139 F.3d at 539, *quoting Dornhecker v. Malibu Grand Prix Corp.,* 828 F.2d 307, 310 (5ᵗʰ Cir. 1987).

The challenged working conditions must be viewed objectively by examining the specific conditions imposed by the employer, not by considering the employee's state of mind. *Boriski v. City of College Station,* 65 F. Supp.2d 493, 506-07 (S.D. Tex. 1999), *citing Epps v. NCNB Tex.,* 7 F.3d 44, 46 (5th Cir. 1993). However, the employee is not required to prove that the employer imposed the intolerable working conditions with the specific intent of forcing the employee to resign. *Haley,* 391 F.3d at 650; *Boriski,* 65 F. Supp.2d at 507. For purposes of evaluating a constructive discharge claim, the relevant working conditions are those the plaintiff was experiencing at the time of his resignation from employment. *Blanks v. Southwestern Bell Communications,* 2001 WL 1636359, *7 (N.D. Tex. 2001), *aff'd* 310 F.3d 398 (5th Cir. 2002), *citing Ugalde v. W.A. McKenzie Asphalt Co.,* 990 F.2d 239, 242 (5th Cir. 1993).

Constructive discharge requires a showing of a greater degree of harassment than that required by a hostile work environment claim. *Id.; Brown,* 237 F.3d at 566; *see also Boriski,* 65 F. Supp.2d at 507, *quoting Woodward v. City of Worland,* 977 F.2d 1392, 1402 (10th Cir. 1992), *cert. denied,* 509 U.S. 923 (1993) ("'[c]onstructive discharge requires considerably more proof than establishing unpleasant working conditions'"). Further, discrimination alone, without aggravating factors, is insufficient for a claim of constructive discharge. *Brown,* 237 F.3d at 566, *citing Boze v. Branstetter,* 912 F.2d 801, 805 (5th Cir. 1990), and *Landgraf v. USI Film Prods.,* 968 F.2d 427, 429-30 (5th Cir. 1992), *aff'd,* 511 U.S. 244 (1994).

Here, the court has determined that Vrzalik has not raised a material fact issue that permits his hostile work environment claim to survive summary judgment. Because Vrzalik has not set forth sufficient evidence of harassment or an otherwise intolerable work environment due to a protected factor (race or age), this claim must also fail on summary judgment.

## IV. Defendant's Motion to Strike Plaintiff's Summary Judgment Evidence

Defendant has moved to strike certain portions of Plaintiff's summary judgment evidence. The court finds that it reaches the same conclusions with respect to Defendant's Motion for Summary Judgment whether or not the evidence objected to is considered. Therefore, Defendant's Motion to Strike Plaintiff's Summary Judgment Evidence is **denied as moot.**

## V. Conclusion

For the reasons stated herein, Defendant's Motion for Summary Judgment is **granted,** and Plaintiff's claims are hereby **dismissed with prejudice.** Defendant's Motion to Strike Plaintiff's Summary Judgment Evidence is **denied as moot.** Judgment will be entered by separate document.

**SO ORDERED.**

Signed May 21st, 2008.

*Ed Kinkeade*

ED KINKEADE
UNITED STATES DISTRICT JUDGE